McEVERS *et al.* *v.* LAWRENCE AND OTHERS.

WHERE a fire policy required persons sustaining loss forthwith to give notice thereof in writing to the Company, &c.; and notice was not given until more than four months after the fire—*Held*, that the party injured could not recover.

Receivers can neither be bound by any implied waiver, nor expressly waive any legal technical defence, or abandon an equitable one.

Neither receivers nor a president of an insurance company have power to dispense with the conditions of a policy.

A void instrument ought not to remain where the pleadings allow the court to annul it. But equity will first see that no person, not a party, can sustain a claim on it; for, in that case, the course will be a perpetual injunction against those who are parties.

Oct. 17th.    THE original bill was filed to compel the receivers of the Merchants' Fire Insurance Company to pay the amount of a policy executed by the Company, and held by the complainants, or such a dividend thereupon as other creditors had received. The cross bill sought a cancelment of the policy.

On the 8th of May, 1828, Gillet and Torey were the owners of the lot 99 Pearl-street; and mortgaged the same to McEvers and Treadwell, in trust for the New-York Insurance Company, for $12,000. Gillet and Torey sold the premises to Folger & Lamb, subject to the mortgage; and they executed another mortgage to the same persons

for $3,000.   On the first of November, 1830, they mortgaged the premises to Anthony Lamb for $11,000.

On the 21st of October, 1834, John Lamb (who it appeared had become the sole owner of the premises) sold the premises to Henry H. Elliott, subject to the three mortgages, the amount of which was included in the purchase money and payment thereof assumed by Elliott.   On the 22d of July, 1835, Elliott effected a policy of insurance with the Merchants' Insurance Company for $6,500 for one year.

The property actually belonged to the firm of Elliott, Huntington & Co., of which Elliott was a member.   The deed was taken to him for convenience only.

On the 27th of July, 1835, an agreement was entered into between the said firm and one James M. Seymour, by which the firm was to sell to Seymour the property in Pearl-street, and Seymour was to sell to them certain property in Brooklyn.   Before the 22d of September, 1835, Seymour requested that the conveyance of the store might be made to William Raymond.   A deed was made from Seymour and wife to Raymond, dated the 17th of September, and delivered on the 17th of October, 1835.

On the 2d of October, 1835, Elliott assigned the policy in writing to McEvers and Treadwell, as a further security for the payment of the monies secured by the two mortgages held by them.   It is admitted that this transfer was made with the assent of the insurers.

The premises were destroyed by the great fire in 1835. They were then worth the full amount of the policy.   The company was rendered insolvent ; and the defendants in the original suit were appointed receivers.

The right to the policy was vested in the New-York Insurance Company, the trustees having assigned to such Company.   The receivers had made a dividend of 68 per cent, and retained that proportion to pay this policy, if so decreed.   There were also other funds for a final dividend, which had not yet been declared.

The pleadings also contained certain averments as to the omission to give notice of the loss, and some proof was

taken upon that subject, which is particularly stated in the opinion of the court.

*Mr. Green,* for the complainants in the original bill; and for those defendants and the defendant Lamb in the cross suit.

*Mr. Nicholl* and *D. B. Ogden,* for the receivers, Lawrence, &c.

*Mr. James Smith,* for the defendant Raymond.

*Mr. Wheeler,* for the defendant Elliott.

The Assistant Vice-Chancellor :—Various objections have been made on the part of the receivers to the relief prayed by the original bill. I have formed so decided an opinion upon the question of the omission to give proper notice of the claim, that I shall not ·enter into the examination of topics, no conclusion upon which could vary the decree I must make.

The policy contains the following clause " persons sus- " taining loss or damage by fire, shall forthwith give no- " tice thereof in writing to the company, and as soon after " as possible they shall deliver as particular an account of " their loss and damage as the case will admit, signed with " their own hands. And they shall accompany the same " with their oath or affirmation declaring the said account " to be true and just ; the whole cash value of the subject " insured ;" and various other particulars prescribed. A certificate under the hand and seal of a magistrate is also to be produced, stating his examination of the circumstances attending the fire, &c. ; and until such proof, declarations and certificates are produced, the loss shall not be payable.

The pleadings in these causes have distinctly raised the point whether notice was given or not. The issue was raised by the allegation of the original bill, that it was duly given shortly after the fire ; and by the denial, on

information and belief in the answer, and the averment that no such notice was given until after the appointment of receivers in May, 1836, more than four months subse- quent to the fire. The secretary of the Company has been examined, and disproves the allegation so far as his information extends. The president or other officers who might have received it as suggested at the bar, have not been examined. It is out of the question to presume notice under such circumstances.

It is, however, said that the receivers have by their conduct impliedly admitted that proper notice was given. This depends mainly upon their letter addressed to the complainants on the 20th of July, 1836. In that they urge various equities, chiefly that the other securities held by the New-York Insurance Company should be resorted to, and it is said they do not urge the want of notice as a ground of resisting the claim. They do however suggest, whether " they are at all answerable out of the funds of " the Merchants' Insurance Company to pay the claim on " the policy or any part thereof." And they apprize them that they shall resort to all legal and equitable means to contest the claim under the policy. There is no admission of notice in this. Nor is there such in any act or statement of the receivers which has been pointed out. Neither can they be bound by any implied waiver of notice. An express waiver of any legal technical defence to a claim, would be as great a breach of duty as an abandonment of the most equitable one. In the case of the receivers of the Life and Fire Insurance Company, the Chancellor treated them as bound to resist the claims of holders of certain securities called bonds, upon grounds of a legal nature, which as between the stockholders and the claimants at least, had but little equity in them. (See 4 *Paige*, 224.)

Under these circumstances the court must proceed to the question whether the neglect to give the notice until more than four months after the loss, is fatal to the claim.

It is urged that the omission may be waived as well as the omission to give full preliminary proofs of loss, and that such waiver may be implied from no objection being

1839.

McEvers *et al.*

*v.*

Lawrence and others.

made on that account, and the refusal being placed upon other grounds. The case of *Vos* v. *Robinson*, (9 *Johns. Rep.* 195,) as to a marine policy, and of *Dawes* v. *The N. R. Insurance Co.*, (7 *Cowen*, 462,) upon a fire policy, have been cited to this point.

The former and other cases establish that a defect in preliminary proofs may be waived. But the waiver must be made by a competent authority. In the latter case it was held that the president of the Fire Insurance Company was not authorized by the charter to waive the full preliminary proofs, although it was admitted that had they been dispensed with by a board of directors, or a committee authorized to settle the claim, the Company would have been bound. But the president had no more power to dispense with the terms of the contract, than any other stockholder.

It would be difficult to sustain the proposition that receivers could dispense with what the contract required. It is however certain that in this case they have not dispensed with it.

The important case of *Inman* v. *The Western Insurance Company*, (12 *Wendell*, 455,) has been cited and commented upon to sustain this defence. It appears to me to establish beyond controversy, that no action could be sustained at law. What right has a court of chancery to declare a different rule ? I cannot find any equity arising from accident, or any other cause on the part of the complainants, much less from the fraud of the defendants, which affords such equity. The original bill cannot be sustained.

Then the question is, whether the relief asked by the cross bill can be given.

If the case rested between the Merchants' Insurance Company and the New-York Insurance Company alone, I should have no difficulty.

The law of the court, whatever doubt may have before existed, is now certain. No instrument deemed to be void by a court of equity, and which it will not enforce, or make the ground of a decree asserting a right, ought to

remain in existence, provided the pleadings enable the court to annul it. The doctrine is fully stated by Justice Story, (2 *Story's Equity*, 10, § 700. See also *Goddard* v. *Garret*, 2 *Eq. Ab*. 371, pl. 2. *French* v. *Conelly*, 2 *Anst*. 454. *Hamilton* v. *Cummings*, 1 *Johns*, *C. R*. 320.)

1839.

McEvers *et al*. v. Lawrence and others.

My doubt arises first from the injury that may result to other and innocent parties, from the neglect of the Company. But I am bound to consider that the Company was the agent to assert their rights as well as its own ; and that all the other parties had a right to supervise their conduct, and to see that their duty was performed ; at least they must; although unfortunately, abide by the Company's neglect ; and the omission of proper notice is a defence against all, wheresoever the fault may lie.

But next I consider, that before the court can decree the cancelment of an instrument, it must see clearly that no person but the parties to the suit can sustain the claim under it. Otherwise the remedy should be a perpetual injunction against those parties.

I do not see that any person except Elliott, Lamb, the Company, or Raymond and his assignee, can possibly have any interest in the question.

The original bill must be dismissed, and a decree be made under the cross bill for delivery up of the policy of insurance. Under the peculiar circumstances of the case, I think each party should bear his own costs.